UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

CALVIN EDWARD COOKSEY,

                    Plaintiff,               14-cv-7146 (JGK)

          - against -                        MEMORANDUM OPINION AND
                                             ORDER
GLOBAL GRIND DIGITAL,

                    Defendant.
─────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiff, Calvin Edward Cooksey, proceeding *pro se*,

brings this action against the defendant, Global Grind Digital

("Global Grind").[1] Construing the plaintiff's pleadings

liberally, the plaintiff seeks damages for alleged libel,

defamation, intentional infliction of emotional distress, and

intentional infliction of mental anguish and monetary sanctions

for alleged spoliation of evidence. The defendant has moved to

dismiss the claims. The Court has jurisdiction pursuant to 28

U.S.C. § 1332 based on diversity of citizenship.

     On August 18, 2014, the plaintiff, proceeding *pro se*, filed

the Original Complaint against Global Grind; Russell Simmons,

Global Grind's former CEO; Brittany Lewis, a writer employed by

Global Grind; and Interactive One, the company that acquired

Global Grind in late 2014. On November 5, 2014, Chief Judge

─────────────────

[1] The defendant asserts that its actual name is GG Digital, Inc.
See Dkt. No. 53. In its papers, the defendant also refers to
itself as "Global Grind" and the Court will do so as well.

Preska dismissed the Original Complaint *sua sponte* for lack of federal subject matter jurisdiction. The Court of Appeals for the Second Circuit vacated the judgment of dismissal and remanded the case to permit the plaintiff, a citizen of California, to amend his Original Complaint to eliminate any dispensable, nondiverse parties. See Cooksey v. Simmons, No. 15-1087 (2d Cir. July 6, 2015) Dkt. No. 35 (summary order) (citing Jaser v. N.Y. Prop. Ins. Underwriting Ass'n, 815 F.2d 240, 243 (2d Cir. 1987)).

In September 2015, the plaintiff, again proceeding *pro se*, filed an Amended Complaint only against Global Grind, alleging that Global Grind is a citizen of New York and that the plaintiff is a citizen of California.[2] In the Amended Complaint (the subject of the defendant's motion to dismiss), the plaintiff reiterated his claims from the Original Complaint, but also added a series of allegations directed at the defendant's counsel related to spoliation of evidence. On the defendant's motion, and after the issue was fully briefed by both parties,

---

[2] After the Court of Appeals remanded the case, Chief Judge Preska entered an Order on July 31, 2015 requiring the plaintiff to file any amended complaint within thirty (30) days. See Dkt. No. 16. The plaintiff failed to do so. Instead, the plaintiff opened a new action, 15-cv-7418, on September 18, 2015, by filing an Amended Complaint. Ultimately, by Order dated September 24, 2015, Chief Judge Preska directed that the Amended Complaint in 15-cv-7418 be docketed as the Amended Complaint in 14-cv-7146, that 15-cv-7418 be closed, and that 14-cv-7146 be reopened. See Dkt. No. 19.

2

the Court ordered the redaction of certain portions of the Amended Complaint related to the defense counsel's alleged destruction of evidence because those allegations are frivolous. See Dkt. No. 46.

Following that Order, the plaintiff engaged in a series of non-dispositive filings. See, e.g., Dkt. No. 78 (accusing the defendant of fraud because, although the motion to dismiss was filed on ECF on February 16, 2016, the plaintiff only received a paper courtesy copy on February 24, 2016); Dkt. No. 95 (criticizing the defendant for not calling a "request for an extension" a "motion"). On April 21, 2016, the Court denied the plaintiff's motion for "automatic[] disqualification," which the Court construed as a motion for the Court to recuse itself. See Dkt. No. 70.

It is unnecessary to review each of the plaintiff's many letters, memoranda and declarations filed with the Court. Construed liberally, the plaintiff has moved for a default judgment and the imposition of Rule 11 sanctions on the defendant. See, e.g., Dkt. No. 79. Not to be outdone, the defendant has cross-moved for the imposition of Rule 11 sanctions on the plaintiff to take the form of a pre-filing litigation injunction. See Dkt. No. 85.

For following reasons, the defendant's motion to dismiss is **granted and the Amended Complaint is dismissed with prejudice**,

the plaintiff's motions for a default judgment and sanctions are **denied**, and the defendant's motion for sanctions is **denied**.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); see also Yajaira Bezares C. v. The Donna Karan Co. Store LLC, No. 13 CIV. 8560 (JGK), 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

4

When faced with a *pro se* complaint, the Court must
"construe [the] complaint liberally and interpret it to raise
the strongest arguments that it suggests." Chavis v. Chappius,
618 F.3d 162, 170 (2d Cir. 2010) (citation and internal
quotation marks omitted). "Even in a *pro se* case, however, . . .
threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Id.
(citation omitted). Thus, although the Court is "obligated to
draw the most favorable inferences" that the complaint supports,
it "cannot invent factual allegations that [the plaintiff] has
not pled." Id.

When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced
in the complaint, documents that the plaintiff relied on in
bringing suit and that are either in the plaintiff's possession
or that the plaintiff knew of when bringing suit, or matters of
which judicial notice may be taken. See Taylor v. Vt. Dep't of
Educ., 313 F.3d 768, 776 (2d Cir. 2002); see also Shabazz v.
Kailer, No. 15-CV-2798 (JGK), 2016 WL 4258134, at *1 (S.D.N.Y.
Aug. 12, 2016).

In amending the Original Complaint to remove the
nondiverse, dispensable parties, the plaintiff stripped many of
his allegations against the defendant of their factual content.
The plaintiff's claims in his otherwise lengthy Amended

Complaint, and the arguments in his papers, rely on allegations contained in, and exhibits attached to, the Original Complaint.[3] See, e.g., Am. Compl. at 24 (referring to cease-and-desist letter attached as Exhibit E to the Original Complaint). Because the plaintiff is proceeding *pro se*, and appears to have intended to supplement the Original Complaint with the Amended Complaint, the Court can consider the relevant factual allegations in the Original Complaint, and attached exhibits, for purposes of the current motion. See e.g., Washington v. Westchester Cty. Dep't of Correction, No. 13 CIV. 5322 (KPF), 2015 WL 408941, at *1 (S.D.N.Y. Jan. 30, 2015); Fleming v. City of New York, No. 10 CIV. 3345 (AT), 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014); Little v. City of New York, No. 13 CV. 3813 (JGK), 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014); Augustus v. Brookdale Hosp. Med. Ctr., No. 13-CV-5374 (DLI), 2015 WL 5655709, at *1 n.2 (E.D.N.Y. Sept. 24, 2015); see also Poindexter v. EMI Record Grp. Inc., No. 11 CIV. 559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits." (citation omitted)).

---

[3] Citations to the Original Complaint and the Amended Complaint refer to the page numbers of the respective ECF documents.

## II.

The allegations in the complaints are accepted as true for the purposes of this motion to dismiss.

The plaintiff alleges that he is the biological father of Frank Ocean, a famous award-winning singer-songwriter and performer. Original Compl. at 5-6; Am. Compl. at 5-6. On December 19, 2012, Mr. Ocean posted a "tweet" on the online social-media networking service, Twitter, stating, "father wanna sue me for a million. like i owe him child support. weak individual bought me a swiss knife at 6 years old then dipped on me." Original Compl., Ex. D; see also Am. Compl. at 5. The plaintiff claims that the tweet referred to him. Am. Compl. at 5.

The defendant runs a website largely devoted to celebrity news. Original Compl. at 4-5; Am. Compl. at 16. On the same day as Mr. Ocean's tweet, that website published the following article about the tweet entitled "Boo Hoo Sad Story – Black American Story":

> Black American Dad Story! Frank Ocean Says His Father Threatened To Sue Him (DETAILS) . . ."Boo hoo, sad story, black American dad story." . . . **Drake's** rhymes have never rang more true. **Frank Ocean** is experiencing a classic celebrity deadbeat dad situation right now. You know, the one where dad goes missing when their child is young, child becomes famous, dad returns, but only because he wants a handout? Yeah, that story. Well, it seems like Frank Ocean is getting a big dose of deadbeat dad *reality*. . . . According to the "Pink Matter" singer, Frank's father has threatened to sue

7

him for a million dollars, and we don't know why. *Frank tweeted about his father stating:* "father wanna sue me for a million. like I owe him back child support. weak individual bought me a swiss knife at 6yrs old then dipped on me." Frank goes on to say: "'7 got *his DNA though, maybe I inherited some of his karma too*." Frank has better things to worry about than his scheming father. The *Channel Orange* singer is nominated for six Grammys. Hopefully, his dad will fall back and disappear like he did when Frank was six. Original Compl. at 8 (emphasis in original); <u>see also</u> Am. Compl. at 5; Dkt. No. 50-1 (full reproduction).

The plaintiff alleges that the descriptions "deadbeat dad" and "scheming father" looking for "a handout" are libel *per se*. Am. Compl. at 6, 16-17. He alleges that "deadbeat dad" is a commonly-known pejorative term of art used to describe male parents "who do not fulfill their parental responsibilities, especially when they evade court-ordered child support obligations." Am. Compl. at 6; <u>see also</u> Original Compl. at 23. He also alleges that to call him a deadbeat dad is to accuse him of committing federal and state crimes related to the nonpayment of child support. Am. Compl. at 12; <u>see also</u> Original Compl. at 20.

The plaintiff claims that he is not a deadbeat dad for two reasons. First, no court or state agency has ever ordered him to pay child support. <u>See</u> Am. Compl. at 11. Second, while he spent some time away from Mr. Ocean when Mr. Ocean was a child, he had legitimate reasons for doing so. <u>See</u> Original Compl. at 3, 14; Am. Compl. at 10-11.

8

The plaintiff also alleges that the term "scheming father" is false because Mr. Ocean deleted his tweet a few minutes after posting it. See Original Compl. at 7; Am. Compl. at 7. In addition, he alleges that Mr. Ocean's mother "brainwashed" Mr. Ocean so that Mr. Ocean is negatively disposed toward the plaintiff. Am. Compl. at 10; see also Original Compl. at 6, 14-15.

The plaintiff alleges that the defendant intentionally and maliciously lied about his status as a deadbeat dad and scheming father to harm his reputation and to draw readers --- especially fans of Mr. Ocean and the Grammy Award Show --- to the website. See Original Compl. at 17-19, 24; Am. Compl. at 6, 16. He also alleges that the defendant did not investigate the truthfulness of its statements, including by contacting state agencies to learn whether the plaintiff had missed child support payments or by consulting online databases like "CrappyDads.com" that contain lists of deadbeat dads, none of which reference the plaintiff. Am. Compl. at 13-14; see also Original Compl. at 15-17, 28.

In addition to being libel per se, the plaintiff claims that the defamatory statements harmed his ability to sell movie scripts, including one about his role as a witness in a criminal case. See Am. Compl. at 11-12; 27-29. The harm extends to related past and future business ventures in the film and music

9

industries. Am. Compl. at 11-12; see also Original Compl. at 29-
30. The plaintiff also claims that he has suffered mental harm
and been prescribed anxiety medications. Am. Compl. at 27.

On December 12, 2013, the plaintiff discovered that the
defendant had removed the offending article from its website.
Original Compl. at 12; see also Am. Compl. at 23-25; Am. Compl.,
Ex. I. The plaintiff alleges that this constitutes intentional
destruction of evidence designed to prevent any court from
reviewing the article and accordingly adjudicating his claims.
See Original Compl. at 12-13; Am. Compl. at 23-25.

The plaintiff seeks $142 million in monetary damages. Am.
Compl. at 25.

### III.

### A.

The defendant argues that the plaintiff's claims for libel,
defamation, intentional infliction of emotional distress and
intentional infliction of mental anguish are time-barred. The
plaintiff essentially concedes that his claims are time-barred,
see, e.g., Original Compl. at 29-30; Dkt. No. 79 at 15, but
contends either that the defendant should be equitably estopped
from raising the statute of limitations defense due to its
deceptive conduct or, alternatively, that the statute of
limitations should be tolled by reason of the plaintiff's own
insanity. The initial issue is whether the statute of

limitations, along with any relevant tolling provisions, of New York or California applies in this case.

A federal court sitting in diversity applies the forum state's statute of limitations provisions as well as any provisions that govern the tolling of the statute of limitations. Diffley v. Allied-Signal, Inc., 921 F.2d 421, 423 (2d Cir. 1990); see also Vincent v. Money Store, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013). In diversity cases in New York, federal courts apply New York's borrowing statute, N.Y. C.P.L.R. § 202. Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998).

The burden of proving that a particular statute of limitation has expired falls on the defendant. N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp., 766 F.3d 212, 230 (2d Cir. 2014). However, the plaintiff bears the burden of proving that a particular statute of limitation has been tolled, including for equitable reasons or by reason of insanity. Doyon v. Bascom, 326 N.Y.S.2d 896, 898 (App. Div. 1971); see also Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243 n.4 (2d Cir. 1984).

Because the plaintiff is a resident of California, N.Y. C.P.L.R. § 202 requires that his action be timely-filed under the shorter time limitation period of California or New York, including all relevant tolling provisions. Stuart, 158 F.3d at 627; see also Vincent, 915 F. Supp. 2d at 562. The Court will

11

apply New York law given that New York and California both share
a one-year statute of limitations for claims for defamation,
including for libel and intentional torts based on defamation.
Compare N.Y. C.P.L.R. § 215(3), with Cal. Civ. Proc. Code §
340(3); see also Four Finger Art Factory, Inc. v. Dinicola, No.
99 CIV. 1259 (JGK), 2000 WL 145466, at *6 (S.D.N.Y. Feb. 9,
2000); Amadasu v. Bronx Lebanon Hosp. Ctr., No. 03 CIV.6450
(LAK), 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005), report
and recommendation adopted sub nom. Amadasu v. Rosenberg, No. 03
CIV.6450 (LAK), 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005), aff'd,
225 F. App'x 32 (2d Cir. 2007). Indeed, under the law of either
State, the plaintiff's claims are time-barred.

It is settled that claims for libel must be filed within
one year of the first publication of the allegedly defamatory
statement, regardless of when the plaintiff actually discovered
the publication. Nussenzweig v. diCorcia, 878 N.E.2d 589, 590
(N.Y. 2007); see also Yajaira Bezares, 2014 WL 2134600, at *3.
"Under New York's single publication rule, it is irrelevant, for
statute of limitation purposes, that a story remains online
after its publication." Biro v. Conde Nast, 963 F. Supp. 2d 255,
267 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015), and
aff'd, 622 F. App'x 67 (2d Cir. 2015) (summary order); see also
Young v. Suffolk County, 705 F. Supp. 2d 183, 212 (E.D.N.Y.
2010).

The defendant published the alleged defamatory statements on December 19, 2012. The plaintiff filed the Original Complaint on August 18, 2014, more than one year after first publication.[4] All of the plaintiff's claims are therefore barred by the statute of limitations.

The plaintiff argues in papers filed on May 23, 2016, that the defendant should be equitably estopped from raising the statute of limitations defense, see Dkt. No. 79, and, later, in papers filed on July 1, 2016, the plaintiff argues that the statute of limitations should be tolled by reason of the plaintiff's insanity. See Dkt. Nos. 91–92. The Court had ordered the plaintiff to respond to the points raised in the defendant's motion to dismiss filed in February 2016 by May 9, 2016. See Dkt. No. 70. This was an extension of the plaintiff's time to respond and the Court warned the plaintiff on multiple occasions that "if [he] fail[ed] to respond to the motion [to dismiss], the Court [would] decide the motion on the papers already submitted." Dkt. No. 70; see also Dkt. No. 72. Therefore, the plaintiff forfeited the arguments when he failed to comply with

---

[4] While the plaintiff filed his Amended Complaint on September 24, 2015, after the time set by Chief Judge Preska to file an Amended Complaint, the Court accepted the Amended Complaint. See note 2, supra. The Amended Complaint relates back to the filing of the Original Complaint. See Fed. R. Civ. P. 15(c); Palatkevich v. Choupak, 152 F. Supp. 3d 201, 225 & n.18 (S.D.N.Y. 2016) ("Where a state claim is at issue for purposes of relation back, FRCP 15(c)(1) requires that a Court apply the more permissive standard as between state and federal law.").

the Court's deadline. See Peterson v. Home Depot U.S.A., Inc.,
No. 11 CIV. 5747 (ER), 2014 WL 1355622, at *4 (S.D.N.Y. Apr. 4,
2014).

In any event, the plaintiff's papers make clear that the
defendant should not be equitably estopped and that the statute
of limitations should not be tolled by reason of the plaintiff's
alleged insanity. First, "[u]nder New York law, the doctrines of
equitable tolling or equitable estoppel may be invoked to defeat
a statute of limitations defense when the plaintiff was induced
by fraud, misrepresentations or deception to refrain from filing
a timely action." Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir.
2007) (internal quotation marks omitted). "Due diligence on the
part of the plaintiff in bringing an action . . . is an
essential element of equitable relief" and the plaintiff "bears
the burden of showing that the action was brought within a
reasonable period of time after the facts giving rise to the
equitable tolling or equitable estoppel claim have ceased to be
operational." Id. (citation, internal quotation marks and
alteration omitted).

The plaintiff argues that the defendant "tricked" him into
filing his claims late. On February 18, 2013, the plaintiff
alleges that he sent the defendant a cease-and-desist letter in
which he identified himself as "James Jordan . . . FRANK
OCEAN[']S FATHER" and demanded that the defendant remove the

14

article from its website within 30 days or else face legal action. Original Compl., Ex. E (emphasis in original); see also Original Compl. at 9; Am. Compl. at 24. After the defendant did not respond, on November 19, 2013, the plaintiff sent the defendant a notice of his intent to file a lawsuit within 30 days, threatening to seek damages of $50 million. Original Compl. at 9; see also Am. Compl. at 23-24. The plaintiff admits that he knew at the time that he only had a month before the one-year statute of limitations ran out: hence he sent the 30-day notice of intent to sue a month prior to the time-bar. See Original Compl. at 9; Am. Compl. at 23-24; Am. Compl., Ex. I; Dkt. No. 79 at 15.

On November 26, 2013, apparently in response to the plaintiff's notice of intent to sue, the plaintiff alleges that he received an insurance claims letter from a third party purporting to be the defendant's insurance company. Original Compl., Ex. F; see also Original Compl. at 9; Am. Compl. at 24. The letter informed the plaintiff that "all future correspondence" related to his claims "should be directed to the [insurance company]" as it worked with him to "resolve" the matter. Original Compl., Ex. F.

On or around December 4, 2013, the plaintiff alleges that Mr. Simmons, the defendant's CEO at the time, called him to discuss settling his claim. Original Compl. at 10-11; see also

15

Am. Compl., Ex. F. The plaintiff alleges that Mr. Simmons offered him $250,000 as a settlement, an offer that the plaintiff pointedly rejected as unfair because the plaintiff estimated that his claim was worth at least $25 million. Original Compl. at 11-12. Mr. Simmons allegedly did not make a counteroffer, but stated his hope that the parties would work out a fair settlement agreement. Original Compl. at 11-12. Mr. Simmons allegedly promised to call the plaintiff back in a few minutes but never did. Original Compl. at 11-12. Around that time, the plaintiff claims that he had another phone conversation with the defendant's counsel where he refused to negotiate with anyone aside from Mr. Simmons and abruptly ended the call without agreeing to any settlement. Am. Compl., Exs. I, K.

On December 12, 2013, a week before the expiration of the statute of limitations, the plaintiff discovered that the article had been removed from the website, leading him to believe something was awry. See Original Compl. at 12-13; Am. Compl. at 23-25; Am. Compl., Ex. I. The plaintiff argues that because he had tremendous respect for Mr. Simmons, and thought the claim would be resolved, he let the time-bar lapse. See Am. Compl., Ex. L; see also Dkt. No. 79 at 15-17. On or around January 6, 2013, the plaintiff called the defendant and reached an employee who refused to discuss any settlement with him and

advised him to direct further communications to the insurance company. Original Compl. at 13; see also Dkt. No. 40 at 12-13.

There is no dispute that the plaintiff failed to file his lawsuit by December 19, 2013, as required by the statute of limitations, and that he was aware of that statute of limitations at the time. Even construing the plaintiff's arguments generously, they do not support a claim of equitable estoppel. The plaintiff's recitation of events at best alleges his "general expectation that the matter would be settled," which is insufficient for a finding of equitable estoppel. Bulgartabac Holding AD v. Republic of Iraq, No. 08 CV 06502 (RJH), 2009 WL 3113252, at *10 (S.D.N.Y. Sept. 30, 2009) (collecting cases); see also Grosz v. Museum of Modern Art, 403 F. App'x 575, 578 (2d Cir. 2010) (summary order) ("The mere existence of settlement negotiations is insufficient to justify an estoppel claim."). While the plaintiff argues that he believed that the matter would be resolved favorably due to communications with the insurance company and the defendant, a hope augmented by his respect for Mr. Simmons, he includes no allegation that any party misrepresented any facts. The insurance company's letter was merely an invitation to negotiate and did not include any specific terms, such as settlement figures or a tolling provision. See Original Compl., Ex. F. Subsequent to the letter, the plaintiff alleges that he *rejected*

17

a purported settlement offer from the defendant as conveyed by
Mr. Simmons. The two sides were orders of magnitude apart ---
$250,000 versus at least $25 million. Therefore, by the
expiration of the time-bar, the plaintiff's allegations
demonstrate that he knew that he had no settlement agreement in
place, and had in fact failed to come even close to an agreement
on any settlement terms not because the defendant had made any
misrepresentations to him, but because he thought that the
defendant's first and apparently only settlement offer was
grossly inadequate. Nevertheless, he took no legal action.
Thereafter, on January 6, 2014, after the statute of limitations
had expired, the plaintiff was again told to speak to the
insurance company. But the plaintiff still did not promptly file
his lawsuit.

　　　Moreover, the plaintiff's argument for equitable estoppel
is foreclosed because the plaintiff did not diligently pursue
his claims. See Abbas, 480 F.3d at 642. The plaintiff's
allegations do not justify his more than eight-month delay in
filing his complaint. See Gun Hill Rd. Serv. Station, Inc. v.
ExxonMobil Oil Corp., No. 08 CIV. 7956 (PKC), 2013 WL 1804493,
at *7 (S.D.N.Y. Apr. 18, 2013) (finding unreasonable 11 month
delay in filing lawsuit due to settlement negotiations during
which time one-year statute of limitations expired). Crediting
the plaintiff's allegations, the failure is particularly

unjustifiable given his discovery that the defendant had removed the article from the website a week prior to the time-bar, which he has alleged was the willful spoliation of evidence. See Am. Compl. Ex. I. The removal was enough to prompt the plaintiff to check on the status of the settlement negotiations with the defendant in early January and his conversation further reinforced his awareness that there was no settlement agreement in place between the parties. The plaintiff was thus on notice that there was no justification for further delay. Although he was aware of the one-year statute of limitations, the plaintiff took no action for more than eight months until he brought his Original Complaint on August 18, 2014. This was not due diligence. Accordingly, equitable estoppel does not apply to avoid the time-bar. See Grosz v. Museum of Modern Art, 772 F. Supp. 2d 473, 490 (S.D.N.Y.) ("[A] plaintiff must do more than declare that equitable tolling is appropriate in order to establish his right to such relief." (citing Boos v. Runyon, 201 F.3d 178 (2d Cir. 2000)), aff'd, 403 F. App'x 575 (2d Cir. 2010) (summary order).

Second, as to tolling by reason of insanity, N.Y. C.P.L.R. § 208 governs. See Feller v. Earth Leasing, LLC, 28 N.Y.S.3d 160, 160 (App. Div. 2016). In New York, the toll for insanity is narrowly construed to apply to "only those individuals who are unable to protect their legal rights because of an over-all

19

inability to function in society." La Russo v. St. George's Univ. Sch. of Med., 747 F.3d 90, 99 (2d Cir. 2014) (quoting McCarthy v. Volkswagen of Am., Inc., 435 N.E.2d 1072, 1075 (N.Y. 1982)). The plaintiff has no plausible claim that he was incompetent to protect his legal rights at the time his claim accrued. To the contrary, the plaintiff has demonstrated that he understood his legal rights throughout, even sending the defendant a cease-and-desist letter and a notice of intent to sue prior to the expiration of the time-bar.

Finally, the plaintiff requested an evidentiary hearing, but no such hearing is required. The extensive record submitted by the plaintiff leaves no doubt that the claims are barred by the statute of limitations. See, e.g., id. at 100; Gay v. Carlson, 60 F.3d 83, 90 (2d Cir. 1995). The plaintiff filed a sprawling Amended Complaint with many exhibits, which the Court has considered in conjunction with the allegations and exhibits from the Original Complaint. The plaintiff's claims are unquestionably time-barred and his own allegations refute his arguments for equitable estoppel and tolling by reason of his own alleged insanity.

Accordingly, the plaintiff's claims for libel, defamation, intentional infliction of emotional distress and intentional infliction of mental anguish are time-barred. Because this is an incurable defect, the claims are dismissed with prejudice.

**B.**

As the Court noted in its Order redacting certain portions
of the Amended Complaint, the plaintiff's request in the Amended
Complaint for sanctions due to spoliation of evidence is without
merit. See Dkt. No. 46. The defendant removed from its website
the offending article but there is no support for an inference
that the defendant destroyed the article or that the plaintiff
was harmed in any way. See, e.g., SAT Int'l Corp. v. Great White
Fleet (US) Ltd., No. 03 CIV. 7481 (KNF), 2006 WL 661042, at *13
(S.D.N.Y. Mar. 16, 2006); John St. Leasehold, LLC v. Capital
Mgmt. Res., L.P., 154 F. Supp. 2d 527, 541 (S.D.N.Y. 2001),
aff'd, 283 F.3d 73 (2d Cir. 2002). The plaintiff and the
defendant have both reproduced the article in their respective
papers for the Court's review. See Dkt. No. 50-1. It is
frivolous to suggest that, when accused of libel, a publisher
must continue to publish the allegedly libelous publication or
else risk sanctions for removing it from a website
notwithstanding its preservation in a screenshot. Accordingly,
the plaintiff's request is denied.

**III.**

Construing the plaintiff's post-Amended Complaint filings
liberally, the plaintiff has moved for a default judgment and
the imposition of Rule 11 sanctions. Both motions are baseless.
The defendant has zealously defended the case from its

21

inception, most recently asking the Court for permission to file a sur-reply in response to the plaintiff's belated "reply." See Dkt. No. 94. Accordingly, the motion for a default judgment is denied. See Pushkin v. Nussbaum, No. 10 CIV 9212 (JGK), 2011 WL 4063493, at *1 (S.D.N.Y. Aug. 12, 2011).

Likewise, the Court has reviewed the plaintiff's request for sanctions and, in its discretion, determined that it is without merit. See Karla Otto, Inc. v. Rivoli Creation, S.A.S., No. 13 CIV 0483 (JGK), 2014 WL 6910546, at *1 (S.D.N.Y. Dec. 5, 2014). None of the defendant's acts have unfairly prejudiced the plaintiff. Moreover, the Court notes that it has granted the plaintiff time extensions to respond to any argument that the defendant raised. See Dkt. Nos. 35, 70. Accordingly, the plaintiff's motion for sanctions is denied as well.

**IV.**

The defendant has cross-moved for the imposition of Rule 11 sanctions, specifically, a pre-filing litigation injunction.

The imposition of Rule 11 sanctions is discretionary, and should be reserved for extreme cases. See Kremedy Fleming v. Hymes-Esposito, No. 12 CIV 1154 (JPO), 2013 WL 1285431, at *11 (S.D.N.Y. Mar. 29, 2013). While the Court has discretion to impose sanctions on a *pro se* litigant, a *pro se* litigant is typically held to a more lenient standard than a trained attorney. Kilkenny v. Greenberg Traurig, LLP, No. 05 CIV 6578

(NRB), 2006 WL 1096830, at *5 (S.D.N.Y. Apr. 26, 2006). A pre-filing injunction is a "drastic measure" and should only be imposed for more abusive litigation than the plaintiff has thus far exhibited. See Sorenson v. Wolfson, No. 10-CV-4596 (JGK), 2016 WL 1089386, at *3 (S.D.N.Y. Mar. 21, 2016).

The plaintiff's conduct and somewhat procedurally suspect filings do not rise to the level of warranting a pre-filing injunction. The defendant argues that the plaintiff sought to turn perceived slights and imagined technical mistakes by the defendant into allegations of conspiratorial criminal conduct and ethical violations that were used in an effort to extract a settlement from the defendant.

However, this is the plaintiff's first litigation against the defendant. The litigation is still at an early phase and the parties conducted no discovery. By contrast, the cases in which courts have imposed a pre-filing injunction involve litigants who have been warned repeatedly not to pursue redundant and frivolous litigation, typically against the same or similar parties. See, e.g., Malley v. N.Y.C. Bd. of Educ., 112 F.3d 69, 69 (2d Cir. 1997) (per curiam); Safir v. U.S. Lines, Inc., 792 F.2d 19, 24-25 (2d Cir. 1986); In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984); Neshewat v. Salem, 365 F. Supp. 2d 508, 529 (S.D.N.Y. 2005), aff'd, 194 F. App'x 24 (2d Cir. 2006) (summary order); Raffe v. John Doe, 619 F. Supp. 891, 898

23

(S.D.N.Y. 1985). The plaintiff has not approached the repetitive litigious conduct that would warrant a pre-filing injunction. Accordingly, the defendant's motion is denied.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted and the Amended Complaint is dismissed with prejudice**, the plaintiff's motions for a default judgment and sanctions are **denied** and the defendant's motion for sanctions is **denied**. The Clerk is directed to enter judgment dismissing this action and closing the case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
          September 19, 2016      _____/s/_____
                                       John G. Koeltl
                                 United States District Judge